BARTELS et al., doing business as CRYSTAL BALL-ROOM, *v.* BIRMINGHAM, COLLECTOR OF INTERNAL REVENUE, et al.

NO. 731.

Argued April 3, 1947.—Decided June 23, 1947.

*Clyde B. Charlton* and *Thomas B. Roberts* argued the cause for petitioners. With them on the brief were *George E. Brammer* and *Joseph I. Brody.*

*Robert L. Stern* argued the cause for Birmingham, Collector of Internal Revenue, respondent. With him on the

brief were *Acting Solicitor General Washington, Sewall Key* and *Lyle M. Turner.*

*Robert A. Wilson* argued the cause for Williams et al., respondents in No. 731. With him on the brief were *Joseph A. Padway* and *Chauncey A. Weaver.*

MR. JUSTICE REED delivered the opinion of the Court.

Petitioners, operators of public dance halls, brought these actions, which were consolidated for trial, against the respondent Collector of Internal Revenue to recover taxes paid under the Social Security Act, Titles VIII and IX, and I. R. C., c. 9, subchap. A and C. Recovery depends on whether petitioners' arrangements for bands to play at the dance halls made the band leaders and other members of the bands employees of the petitioners or whether, despite the arrangements, the leaders were independent contractors and therefore themselves the employers of the other members. Several band leaders were allowed to intervene in the *Bartels* case as defendants to protect their own interests. After a recovery in the District Court, 59 F. Supp. 84, was reversed by the Circuit Court of Appeals, *Birmingham* v. *Bartels,* 157 F. 2d 295, petitioners sought certiorari which we granted because of the importance of the issue to the administration of the Act. 329 U. S. 711. See *United States* v. *Silk* and *Harrison* v. *Greyvan Lines,* 331 U. S. 704.

These cases are not concerned with musicians hired by petitioners to play regularly for their dance halls but with "name bands" hired to play for limited engagements at their establishments. These bands are built around a leader whose name, and distinctive style in the presentation and rendition of dance music, is intended to give each band a marked individuality. The leader contracts with different ballroom operators to play at their establishments for a contract price. Almost all of the engagements here involved were one-night stands, some few being

for several successive nights. The trial court found, and there is no real dispute, that the leader exercises complete control over the orchestra. He fixes the salaries of the musicians, pays them, and tells them what and how to play. He provides the sheet music and arrangements, the public address system, and the uniforms. He employs and discharges the musicians, and he pays agents' commissions, transportation and other expenses out of the sum received from the dance hall operators. Any excess is his profit and any deficit his personal loss. The operators of the dance halls furnish the piano but not the other instruments.

The American Federation of Musicians, of which the leaders and the musicians are members, adopted a standard contract known as "Form B." The terms of this contract create the difficulties in the determination of this case. As compensation to the bands, some contracts call for a guaranteed sum, with the privilege to the bands to take a percentage of the gross. Other contracts are for a fixed sum, only, and others for a percentage of gross, not to exceed a fixed sum. The contract states that the ballroom operator is the employer of the musicians and their leader, and "shall at all times have complete control of the services which the employees will render under the specifications of this contract." The form paragraph, so far as pertinent, is set out in the margin.[1] The District

---

[1] "Witnesseth, That the employer employs the personal services of the employees, as musicians severally, and the employees severally, through their representative, agree to render collectively to the employer services as musicians in the orchestra under the leadership of Griff Williams, according to the following terms and conditions:

.            .            .            .            .

"The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract. On behalf of the employer the Leader will distribute the amount received from the employer to the employees, including him-

Court found that the contract was adopted by the Union in order to shift the incidence of the social security taxes from the leader to the ballroom operator, and that it had no practical effect on the relations between the musicians, leader, and operator. The District Court held that the question of employment under the Act was one of fact, and that the contract was only one factor to be considered. Since the District Court believed that the contract was not entered into "by fair negotiation" and that its purpose was to protect the leaders from taxes as employers, it concluded that the contract was of no effect and that the leader was an independent contractor employing the musicians.

The Circuit Court of Appeals thought otherwise. It concluded that the test of employment was the common law test of control, *i. e.*, that one was an employer if he had the "right" to direct what should be done and how it should be done. It concluded that the contract between the parties gave the ballroom operators the "right" to control the musicians and the leader, whether or not the control was actually exercised. While the majority thought that such a contract was not binding on the Government, they thought it was binding on the parties and would control liability for employment taxes if the Bureau of Internal Revenue chose to accept the arrangement as valid. *Birmingham* v. *Bartels, supra,* at 300.

---

self, as indicated on the opposite side of this contract, or in place thereof on separate memorandum supplied to the employer at or before the commencement of the employment hereunder and take and turn over to the employer receipts therefor from each employee, including himself. The amount paid to the Leader includes the cost of transportation, which will be reported by the Leader to the employer. The employer hereby authorizes the Leader on his behalf to replace any employee who by illness, absence, or for any other reason does not perform any or all of the services provided for under this contract. . . ."

130

The Government here relies entirely on the contract, conceding that otherwise the bandleaders are independent contractors employing the musicians. On the other hand, the bandleaders involved contend also that though the contract be thought inconclusive, the leaders and musicians are employees of the operators. They rely upon the dependence of the orchestra members upon the ballroom operators judged in the light of the purposes of the Act.

In *United States* v. *Silk, supra,* we held that the relationship of employer-employee, which determines the liability for employment taxes under the Social Security Act, was not to be determined solely by the idea of control which an alleged employer may or could exercise over the details of the service rendered to his business by the worker or workers. Obviously control is characteristically associated with the employer-employee relationship, but in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service. In *Silk,* we pointed out that permanency of the relation, the skill required, the investment in the facilities for work, and opportunities for profit or loss from the activities were also factors that should enter into judicial determination as to the coverage of the Social Security Act. It is the total situation that controls. These standards are as important in the entertainment field as we have just said, in *Silk,* that they were in that of distribution and transportation.

Consideration of the regulations of the Treasury and the Federal Security Agency, quoted in *Silk,* 331 U. S. 704, at note 8, is necessary here. I. R. C., chap. 9, §§ 1429, 1609. Under those regulations, the Government successfully resisted the effort of a leader of a "name" band, like those here involved, to recover social security taxes paid on the wages of the members of his organization. *Wil-*

*liams* v. *United States,* 126 F. 2d 129. The contract in that case was not "Form B" and did not contain any corresponding control clause. Two years later, the Commissioner of Internal Revenue issued mimeographs 5638, 1944–5–11651, and 5767, 1944–22–11889, 1944 Cum. Bull. 547–48. They were directed at the status of musicians and variety entertainers appearing in theatres, night clubs, restaurants and similar establishments. Collectors and others were therein advised that a "Form B" or similar contract with the entertainers made operators of amusement places liable as employers under the Social Security Act. In the absence of such a contract, that is, in reality, the absence of the control clause of "Form B," the entertainers, with "short-term engagements for a number of different operators" of amusement places, would be considered "independent contractors." The argument of respondents to support the administrative interpretation of the regulations is that the Government may accept the voluntary contractual arrangements of the amusement operators and entertainers to shift the tax burden from the band leaders to the operators.[2] Cases are cited to support this position.[3] All of these cases, however, involve the problem of corporate or association entity. They are not pertinent upon the question of contracts to shift tax liability from one taxpayer to another wholly distinct and disconnected corporation

---

[2] There is a contention that the contracts were coerced because the operators could not secure these musicians under other arrangements. We do not find it necessary to rely or pass upon that contention.

[3] *Edwards* v. *Chile Copper Co.,* 270 U. S. 452, 456; *Burnet* v. *Commonwealth Improvement Co.,* 287 U. S. 415; *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435; *Helvering* v. *Coleman-Gilbert Associates,* 296 U. S. 369, 374; *Higgins* v. *Smith,* 308 U. S. 473, 477; *Gray* v. *Powell,* 314 U. S. 402; *Moline Properties, Inc.* v. *Commissioner,* 319 U. S. 436, 439; *Interstate Transit Lines* v. *Commissioner,* 319 U. S. 590; *Schenley Corp.* v. *United States,* 326 U. S. 432, 437.

or individual. We do not think that such a contractual shift authorizes the Commissioner to collect taxes from one not covered by the taxing statute. The interpretive rulings on the Regulations, referred to in this paragraph, do not have the force and effect of Treasury Decisions.[4] We are of the opinion that such administrative action goes beyond routine and exceeds the statutory power of the Commissioner. *Social Security Board* v. *Nierotko,* 327 U. S. 358, 369–70.

This brings us then to a determination of whether the members of a "name band" under the circumstances heretofore detailed are employees of the operator of the dance hall or of the leader. If the operator is the employer, the leader is also his employee.

We are of the opinion that the elements of employment mark the band leader as the employer in these cases. The leader organizes and trains the band. He selects the members. It is his musical skill and showmanship that determines the success or failure of the organization. The relations between him and the other members are permanent; those between the band and the operator are transient. Maintenance costs are a charge against the price received for the performance. He bears the loss or gains the profit after payment of the members' wages and the other band expenses.

The judgments of the Circuit Court of Appeals are reversed and those of the District Court are affirmed.

*Reversed.*

Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Murphy concur, dissenting.

As the opinion of the Court points out, the Form B contract involved in the present case was adopted, with the approval of the Commissioner of Internal Revenue,

---

[4] See 1944 Cum. Bull., notice, p. I.

.

after it had been held under an earlier form of contract that members of the orchestra were employees of the band leader. On the face of the present contract the dance hall proprietor is the employer even under traditional concepts of master and servant. For he has all of the conventional earmarks of the entrepreneur—ownership, profit, loss, and control—if the provisions of the contract alone are considered. Then the requirements of the Social Security Act are satisfied. And to hold the dance hall proprietor liable for the tax is not to contract the coverage contemplated by the statutory scheme.

I think the tax collector should be entitled to take such private arrangements at their face. In other situations a taxpayer may not escape the tax consequences of the business arrangements which he makes on the grounds that they are fictional. The Government may "sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." *Higgins* v. *Smith,* 308 U. S. 473, 477. That rule is not restricted in its application to the use by taxpayers of corporate or related devices to obtain tax advantages. It was applied in *Gray* v. *Powell,* 314 U. S. 402, where a railroad sought exemption from the Bituminous Coal Act by contending that the operations of one who appeared to be an independent contractor were in fact its operations. The Court in rejecting the contention said that "The choice of disregarding a deliberately chosen arrangement for conducting business affairs does not lie with the creator of the plan." *Id.,* 414. I see no reason for creating an exception to that rule here. If the Government chooses to accept the contract on its face, the parties should be barred from showing that it conceals the real arrangement. Tax administration should not be so easily embarrassed.