**CONSOLIDATED HOUSECRAFT, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 13839.

United States District Court
E. D. New York.

Feb. 13, 1959.

Joel H. Fisher, Washington, D. C., Joseph J. Lyman, Washington, D. C., of counsel, for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Philip R. Miller, George T. Rita, Attorneys, Department of Justice, Washington, D. C., Cornelius W. Wickerhham, Jr., U. S. Atty., Brooklyn, N. Y., Lloyd H. Baker, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

BRUCHHAUSEN, District Judge.

This action and three other actions were tried by the Court without a jury. The plaintiff in each such action seeks recovery of Federal Unemployment and Federal Insurance Contribution taxes, assessed and paid under 26 U.S.C.A. 1952 ed., §§ 1426(d) and 1607(i), now 26 U.S. C.A. §§ 3121(d) and 3306(i).

The said other three actions are entitled as follows, viz.: The O. G. Norton Company, Inc. v. United States of America, Civil No. 13800; New York Bondstone Corporation v. United States of America, Civil No. 14965 and Queensboro Construction Company v. United States of America, Civil No. 14983.

In each of the cases the plaintiff alleges that the payments were erroneously made since the workers for whom the taxes were paid were independent contractors and not employees as defined in the statute. Whether said workers were independent contractors or employees is the sole issue in each case.

The basic factual elements apply to each action. The plaintiffs are engaged in various branches of the home improvement business in that Norton supplies and installs storm windows, Consolidated and Queensboro improve roofs and side walls and Bondstone applies bondstone roofing and siding. The methods of operation of each plaintiff are essentially similar.

It was established that contracts for application of the various materials were obtained by plaintiffs' salesmen and a work sheet prepared for each job. Each work sheet contained the name of the customer, the site of the job, a general description of the work to be performed and the total cost thereof. The job sheet was then offered to an installer or applicator at an agreed rate per unit.

Plaintiffs had lists of available applicators and would call one of them and

offer him the job. The applicator had the right to reject such offer. If the applicator accepted the offer, plaintiff furnished the material required and either delivered such material to the job site or made it available to the applicator. Each applicator supplied his own tools as well as necessary transportation.

Plaintiffs did not supervise the work of the applicators nor instruct them as to how the job should be performed. During the process of the work, plaintiffs would not remove an applicator nor shift him to another job. However, if an applicator's work was unsatisfactory, the affected plaintiff would refrain from offering that applicator additional work sheets. Plaintiffs had no obligation to offer the applicators any specific number of jobs during the course of a year nor were the applicators required to accept a specific number. There was no agreement as to how long a specific job should take and an applicator could determine his own work hours.

Payment was based on an entire job but periodic payments based on the amount of work already performed were usually made one day each week. If a customer required extra work, the applicator would negotiate with the plaintiff concerned and be paid a flat rate in addition to his basic fee.

Applicators could hire helpers as required but were responsible for their compensation. Plaintiffs did not have the right to approve the helpers nor were they obligated to pay their compensation, if hired.

Upon completion of a job the applicator caused the customer to sign for it and delivered the signed receipt to the affected plaintiff for payment of the agreed price. If the work was unsatisfactory, the applicator was obligated to correct the deficiency without additional compensation. Upon the completion of the task the applicator was free to contract with others for work.

■ There is no fixed rule applicable to a situation in order to ascertain whether workers are independent contractors or employees. A number of elements such as degree of control, opportunity for profit and loss, investment in facilities, permanency of relationship and skill required in the claimed independent operation are important and must be considered. No one is controlling nor is the list complete. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757. The entire situation must be considered. Bartels v. Birmingham, 332 U. S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947.

■ The workers herein involved were independent contractors and not employees.

■ While all of the facts in a particular situation must be considered, the element of control is emphasized rather than the details of the workers' performance. Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715.

The control exercised by plaintiffs in these cases was more comparable to that of a general contractor over a subcontractor than that of an employer over an employee. Once hired, the worker had almost complete discretion as to the operating details of the job to be performed. He prepared his own work schedule, hired his own helpers, applied the materials in his own way and generally conducted his own affairs. Plaintiffs' only supervision was superficial and more in the nature of customer relations than supervision. An employer's control over his employees would be far more stringent than that shown here. See Silver v. United States, D.C., 131 F.Supp. 209.

The cases relied upon by the Government show far greater control over the workers' activities than in these cases. In Ben v. United States, D.C., 139 F. Supp. 883, plaintiff therein dismissed workers before the completion of a job. The plaintiff would not offer a worker additional work sheets if he refused one. In some instances workers were paid at an hourly rate rather than by the job. In E. F. Williams Co. v. United States, D. C., 139 F.Supp. 875, plaintiff supplied any additional helpers that might be necessary. Extra work was performed at an hourly rate and plaintiffs supplied some of the equipment required for the

work. None of those elements are present in the cases at bar.

The Government's contention that individual applicators must be made to testify has no merit since the question presented was the status of a class of workers. No evidence was introduced indicating a variance of the conditions of workers within each category.

The plaintiff in this action and the plaintiff in each of the other three actions is entitled to the relief sought.

Settle the decrees on ten days' notice.