Kathrine FRANTES, and John M. Frantes, Deceased Wage Earner, by Kathrine Frantes, Plaintiff,

v.

Anthony CELEBREZZE, Secretary of Health, Education, and Welfare for the United States of America, Defendant.

No. 3–63–Civ. 330.

United States District Court
D. Minnesota,
Third Division.

Dec. 18, 1964.

John J. Connelly and Bundlie, Kelley & Torrison, St. Paul, Minn., for plaintiff.

Miles W. Lord, U. S. Atty., and Sidney P. Abramson, Minneapolis, Minn., for defendant.

LARSON, District Judge.

This action was brought for judicial review of a final decision by the Secretary of Health, Education and Welfare disallowing the application of plaintiff, Mrs. Kathrine Frantes, for survivor's insurance benefits and disallowing the application filed by her deceased husband for old-age insurance benefits.[1] The matter is now before the Court on defendant's motion for judgment on the basis of the evidence before the Hearing Examiner. Whether Mrs. Frantes has any right to the benefits sought depends entirely on whether her husband was a "fully insured" individual under Section 202(a) of the Social Security Act, as amended, 42 U.S.C. § 402(a) (1958).

The only issue at the hearing was whether during the years 1958 through 1960 John Frantes was an employee of the plumbing firm owned by his sons or an independent contractor.[2] The

---

[1.] Such review is provided for by § 205(g) of the Social Security Act, as amended, 53 Stat. 1370–71 (1939), 42 U.S.C. § 405(g) (1958).

As to the scope of review, the statute provides:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

[2.] The Hearing Examiner quite properly defined the issue as being whether John Frantes was carrying on an independent "trade or business" as that term is used in § 162 of the Int.Rev.Code of 1954, 26 U.S.C. § 162. It seems easier to use the traditional terminology of employee and independent contractor since the same factors are involved.

The statutory pattern by which this became the main issue needs to be explained in some detail.

In order to be covered under the Act, an individual must earn "wages" or "self-employment income" in accordance with certain requirements which are not now important.

In defining wages, section 209 of the Act, as amended, 64 Stat. 492–93 (1950), 42 U.S.C. § 409 (1958) merely provides that, "[f]or the purposes of this subchapter, the term 'wages' means * * * remuneration paid after 1950 for employment * * *."

Section 210(a) of the Act, ch. 809, § 210, 64 Stat. 494–95 (1950) provided the definition of employment during the relevant period. It stated that:

"The term 'employment' means * * * any service, of whatever nature, performed after 1950 * * * by an employee for the person employing him, * * * except that * * * such term shall not include—

* * * * *

"(3) Service performed by an individual in the employ of his son * * *."

As of January 1, 1961, a new provision became effective which is now designated as section 210(a)(3)(B) of the Act, 74 Stat. 942 (1960), 42 U.S.C. § 410(a)(3)(B) (Supp. V, 1964). It replaced the original subsection (3) and the part now relevant excludes from the definition of "employment" only

"(B) Service not in the course of the employer's trade or business * * * performed by an individual in the employ of his son or daughter * * *."

This provision was not in force during any of the years with which this action is concerned. If it had been, the plaintiff would be entitled to prevail, as later discussion will show.

As 42 U.S.C. § 410(a) makes clear, in order for one to have "employment" he must be an employee. According to section 210(j) of the Act, as amended, 64 Stat. 495 (1950), 42 U.S.C. 410(j) (Supp. V, 1964), "[t]he term 'employee' means * * * (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *."

Thus, the crucial issue at the hearing was whether, by the traditional common-law test, John Frantes' work for his sons had been performed as an employee or as an independent contractor. If he was an independent contractor, then it may be assumed that he qualified for benefits under the "self-employment" provisions of the statute. The Hearing Examiner ruled that Mr. Frantes was an employee

Hearing Examiner found that John Frantes was an employee of the partnership operated by his sons, and this finding was accepted by the Appeals Council by its action in refusing to review that determination. The plaintiff seeks to have the Court set the finding aside and declare, as a matter of law, that John Frantes was an independent contractor.

■ At the outset this raises the problem of the scope of the review which this Court will give to the findings of the Secretary. The Act provides that his findings are conclusive if they are supported by "substantial evidence." [3] This has been interpreted to mean that there must be enough relevant evidence so that, on the record as a whole, a reasonable mind might consider it adequate to support the conclusion reached.[4]

■ With this in view, the facts which appear from the testimony can be briefly considered. John M. Frantes operated a plumbing and heating business from 1932 to 1949. In early 1950 failing health caused him to sell the business to his sons who thereafter operated it under the name John M. Frantes' Sons, Plumbing & Heating, in accordance with properly filed articles of partnership.

Since neither of the sons had a master plumber's license at the time, and since their father had valuable knowledge about the way in which the plumbing and

heating systems were laid out in many of the larger buildings served by the firm, the sons often asked him to give them advice and help on particular problems. In return, the partnership paid him varying sums averaging about $2,-000 a year from 1951 through 1961. Payments were usually made on a monthly basis. John Frantes never worked for any other firm, did not carry on any business under his own name, and performed services which were a regular part of the business of the partnership. All of these factors support the Hearing Examiner's conclusion that John Frantes was an employee of the firm under the traditional common law tests.[5]

Plaintiff relies on three factors in attacking the Hearing Examiner's decision.

■ 1. After 1957, payments to Mr. Frantes were carried on the books of the partnership under the heading "Supervisory Payroll" and no social security payments were made for him as they were for regular employees of the firm. This treatment appears to have received the informal approval of the Internal Revenue Service. However, even if the Internal Revenue Service had made a binding determination of John Frantes' status for its purposes, that would not bind the Social Security Administration.[6]

of the firm run by his sons and thus was not engaged in employment which could qualify him for benefits under the Act because of the exception just quoted in what was then section 210(a) (3) of the Act. The Appeals Council upheld this decision by refusing to review it.

3. See n. 1 supra.

4. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963), Sanders v. Celebrezze, 225 F. Supp. 836 (D.Minn.1963), Carpenter v. Flemming, 178 F.Supp. 791 (N.D.W.Va. 1959).

5. The common law rules are summarized and many cases are cited in Cape Shore Fish Co. v. United States, 330 F.2d 961, 964–965 (Ct.Cl.1964). (n. 5 in that

opinion sets forth a Treasury Regulation which has been adopted verbatim by section 404.1004(c) of Social Security Administration Regulations No. 4, 20 C.F.R. § 404.1004(c) (1961) as the Administration's definition of the common law tests of employee status. The regulation merely lists some of the standard factors to be considered with emphasis on the right of control. As indicated later in the opinion, the right of control is not a very useful item to consider in this case.) Also see: United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L. Ed. 1757 (1947); Minnesota Milk Co. v. N. L. R. B., 314 F.2d 761, 765 (8th Cir. 1963); and Restatement, (Second), Agency § 220 (1958).

6. Cf. Carpenter v. Flemming, supra n. 4.

2. There is substantial evidence to indicate that neither John Frantes nor his sons believed their relationship was one of employer-employee. While this is a relevant factor, it is only one of many to be considered.[7]

3. The contention is made that the sons never had the "right of control" over their father since he served them by giving advice or information which the sons would always take. But this is essentially the situation whenever one person is hired by others to perform expert services. In such cases, "right of control" can obviously mean no more than the right to determine the problems to which the expert will be directed to apply his knowledge. Since this is also what one often does with an independent contractor, the net result is simply that the relationship between the parties must be determined by other guidelines.

On balance, there seems to be ample evidence to sustain the finding of the Hearing Examiner that John Frantes was an employee of the partnership. Considering the length and nature of his relationship with the partnership and the fact that he never performed services for others, the Court feels it would not have reached a different conclusion if it had originally been asked to decide the matter.

Once the Hearing Examiner decided that John Frantes had employee status, he assumed that the employment would not qualify Frantes for old age insurance benefits because it would be ex-cluded employment as "[s]ervice performed by an individual in the employ of his son" under 42 U.S.C. § 410(a) (3).[8] This statutory provision was amplified by a Social Security Regulation which provides:

"(a) Certain services are excepted from employment because of the existence of a family relationship between the employee and the individual employing him. The exceptions are as follows:

\* \* \* \* \* \*

"(2) Services performed by a father \* \* \* in the employ of his \* \* \* son. \* \* \*

\* \* \* \* \* \*

"(c) Services performed in the employ of a corporation are not within the exception. *Services performed in the employ of a partnership are not within the exception unless the requisite family relationship exists between the employee and each of the partners comprising the partnership.*"[9] (Emphasis added.)

Although the point was not considered below, the plaintiff now urges that the regulation is invalid. The case of Celebrezze v. Kilborn, 322 F.2d 166 (5th Cir. 1963) has so held.

The Fifth Circuit's comment on the Regulation was that:

"Efforts of an administrator or administrative agency to enlarge or restrict the application of a statute should be subjected to close scrutiny. The Social Security Act was

---

7. Restatement, (Second), Agency § 220, comment m (1958) states:
   "It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other."

8. The opinion itself does not discuss this, but all the earlier denials of John Frantes' claim had been based on this reasoning and the issue of his status was presented against this background.

9. 20 C.F.R. § 404.1011 (1961) (First published on December 28, 1951). The plaintiff has suggested that the enactment of 42 U.S.C. § 410(a) (3) (B) quoted in n. 2 supra is effectively a congressional repudiation of this regulation. That is obviously not true. The regulation remains in force under the new section although the number of cases in which it will be relevant is drastically reduced by the statutory change.

not intended to be restrictively construed in denying coverage. The purpose of the family relationship exclusion was to prevent fictitious employments in order to create an insured status. There seems to be little or no more reason for suspecting that abuses would arise in the case of a partnershp comprised of the children of the employee, than where the employer might be a corporation whose only stockholders were the employee's children. We think that the Secretary exceeded his statutory powers in the promulgation of the quoted portion of the Regulation. See Bartels v. Birmingham, 332 U.S. 126 [67 S.Ct. 1547, 91 L.Ed. 1947]." (Footnote omitted.) [10]

The first problem presented is that of the weight to be accorded administrative regulations. This Court fails to see how any useful regulation could be promulgated that did not "enlarge or restrict the application of a statute." Nor does the case cited in support stand for such a sweeping proposition. In any event, the Eighth Circuit has recently summarized the controlling maxims as follows:

"It is well settled, of course, that administrative construction of an Act is entitled to great weight. * * * Regulations are to be sustained unless unreasonable and plainly inconsistent with the statute and they are not to be overruled except for weighty reasons. * * * One

claiming that a regulation is invalid has the heavy burden to 'make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified· in the act of Congress.' * * * Regulations, however, cannot be arbitrary. They must have a basis in the statute and be within the authority granted the administrative agency. * * *" Citations omitted.) [11]

▉ Judged by these standards, this Court does not feel that the regulation is so arbitrary or unreasonable as to be invalid.

The Court in Kilborn appears to have felt that the distinction drawn between employees of corporations and employees of partnerships was unreasonable. However, there appear to be at least three justifications for the Secretary to make that distinction.

1. The traditional common law approach considered a corporation a separate juridical personality, but denied that status to a partnership. Thus, under the traditional theory, an employee of the partnership would be more like an employee of the partners as individuals and within the ban of 42 U.S.C. § 410(a) (3) if all the partners meet the relationship tests.

2. The Social Security Act is, in large part, a tax statute and is shot through with references to the Internal Revenue Code.[12]

---

10. 322 F.2d 168.

11. Review Committee, Venue VII, etc., v. Willey, 275 F.2d 264, 272 (8th Cir.) cert. denied 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522 (1960).

12. E.g., § 211(d) of the Social Security Act, 64 Stat. 504 (1950), 42 U.S.C. § 411(d) (1958) provides that "[t]he term 'partnership' and the term 'partner' shall have the same meaning as when used in

supplement F of chapter 1 of Title 26." (The sections referred to now appear as Int.Rev.Code of 1954, §§ 701–704, 706, 6031, 6063, and 6065(a).)
Under section 211 of the Act, 42 U.S.C. § 411, it is plain that members of partnerships are treated just like individuals. If the partnership is engaged in appropriate activities, then each member will be considered as earning "self-employment income." Also see n. 13 infra.

Needless to say, the most important distinction which the Internal Revenue Code makes between corporations and partnerships is that the former are usually separate entities for tax purposes while partnerships are generally not.

3. The Secretary may simply have been following the lead of the only case on the point prior to the time the regulation was promulgated, Ekus v. Altmeyer, 52 F.Supp. 306 (E.D.N.Y.1943).

These distinctions in the legal treatment of corporations and partnerships certainly appear to serve as an adequate basis for the Secretary to make the distinctions drawn in Reg. § 404.1011(c).

Having decided that the regulation is valid, there is no point in my discussing in any detail the other contentions made by the parties and passed on in the Kilborn case. The points have been argued, however, and it seems appropriate to express my views on them briefly.

After the court in Kilborn held the regulation invalid, it decided that the crucial issue was whether a partnership should be treated as a separate entity or as an aggregate of its partners. It assumed that if entity treatment was proper, the partnership would be considered the employer and the ban of the statute would not apply. The court thought Alabama law should govern the determination of whether the "entity" theory of partnerships should prevail and concluded that Alabama had adopted the entity theory. The court also indicated that it thought the entity theory would be appropriate even if Federal tax law was viewed as a guide.

No useful purpose would be served by an abstract discussion of whether a partnership is "primarily" an entity under either Minnesota law or the Federal tax laws. As one court has pointed out:

> "The circumstances under which a jural aggregate—admittedly the status of a partnership under the federal revenue laws and the Uniform Partnership Act—may become a jural entity are fascinating in their possibilities for semantic dispute. But this should not be allowed to go so far as to draw all teeth from a statute carefully directed at what the legislative body viewed as * * * evil * * *." [13]

Thus, the question of how a partnership is to be treated should be resolved by considering which method best gives effect to the purpose of the statute. [14]

---

13. C. I. R. v. Whitney, 169 F.2d 562, 565 (2d Cir.) cert. denied 335 U.S. 892, 69 S.Ct. 247, 93 L.Ed. 429 (1948). The comment quoted relates to the construction of a tax statute, but the same reasoning is applicable here. The Court considers that the revenue laws generally view partnership according to the "aggregate" theory, but that there are appropriate spots for taking the entity approach. The approach to be taken in any case depends on which view seems most appropriate to the Congressional purpose in enacting the statute being construed. 169 F.2d 567–68. Nor has anything in the Internal Revenue Code of 1954, including Subchapter R, really changed this. Cf. Palda v. C. I. R., 253 F.2d 302 (8th Cir. 1958) and Foster v. United States, 329 F.2d 717 (2d Cir. 1964).

14. 1 Rowley, Partnership § 1.3 (2nd ed. 1960); and Sugarman, Partnership § 4 (3rd ed. 1960).
This approach to the problem automatically makes State law inapplicable since the solution depends on the interpretation of a Federal statute. Although, as the district court opinion in Kilborn points out, there are some circumstances in which the Social Security Act expressly adopts State law by reference, the construction of its provisions in other cases would clearly appear to be a matter of Federal law. Cf. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). (Writs of certiorari were granted "because of the general importance in the collection of social security taxes of deciding what are the applicable standards for the determination of employees under the.

**616**

Judging the issue by this standard, it is difficult to see how partnerships can be treated for these purposes except by considering the identity of the individual partners as determinative. Every possibility of fraud and collusion that is present in the case of the employment of a father by his son is equally present when the employer is a partnership formed by two sons. The individual partners must be considered as the employers if the objectives of the statute are to be realized in any rational way.[15] This is the holding of the first case on the point, Ekus v. Altmeyer, supra, which reached its result without the benefit of any interpretive regulations.[16] Indeed, the difficult question would be why the same reasoning should not be applied to a corporation which is wholly owned and operated by people who meet the relationship tests of the statute. However, the Secretary has provided differently by his regulations and the Court has already indicated that there are sufficient grounds for his interpretation.

For these reasons the decision of the Hearing Examiner should be affirmed. The defendant's motion for judgment is granted.

Act. Varying standards have been applied in the federal courts.") The same uniformity needed in tax collections would seem appropriate in deciding who is entitled to payments unless the statute directs otherwise. Note, too, that the provision construed in United States v. Silk, supra, looked to the traditional common law tests to determine the existence of an employer-employee relation, but the Court made no attempt to apply any particular State law.

15. It is, of course, true that the 1960 amendments to the Act altered the exclusion to bring the type of employment considered here within the coverage of the Act. Nor is there any suggestion of fraud in this case. Naturally, these are not facts which are technically relevant to the interpretation of the Act. However, when combined with the standard doctrine that Acts such as this should be construed liberally to expand coverage, they do make a narrow, rigid construction of this exclusion tempting. This is what makes the Kilborn case a problem, even though it is easy to disagree with every important legal rationale given for its conclusion.

My conclusion in this case is based on the theory that, prior to the 1960 amendments, it would have been impossible to reach the conclusion the plaintiff urges without simply ignoring the anti-fraud motives which underlay the exclusion from coverage here in question. Furthermore, if a case should arise in which the employment by a partnership, did not meet the test of the new exclusion of 42 U.S.C. § 410(a) (3) (B) and fraud were obvious, it is inconceivable to me that the statutory bar would not be effective.

16. 20 C.F.R. § 404.1011 was first published on December 28, 1951, at 16 Fed. Reg. 13067.