**Harold F. MARTIN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 65–441–Civ–T.**

United States District Court
M. D. Florida,
Tampa Division.

March 14, 1967.

Marvin Solomon, Arnold D. Levine, Tampa, Fla., for plaintiff.

Rodger M. Moore, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

ORDER SUSTAINING DEFEND-
ANT'S MOTION FOR JUDG-
MENT NOTWITHSTANDING
THE VERDICT.

DUNCAN, Senior District Judge.

Plaintiff instituted this suit against the defendant, entitled, "Complaint for abatement and refund of withholding taxes, F.I.C.A. and F.U.T.A." seeking to recover the sum of $375.00 for partial payment of said taxes and to abate the sum of $18,292.65 which the Collector of Internal Revenue had assessed against the plaintiff for failure to withhold and report taxes.

In its Answer the defendant alleged that the amount of tax was properly and legally assessed by the Collector, and that plaintiff was not entitled to its refund, and in its Counterclaim, defendant sought to recover the taxes assessed for the years 1958, 1959 and 1960, in an amount in excess of $18,000.00 and penalties.

The following facts were stipulated as true in a pre-trial conference, and will be so accepted in the trial of this case:

"The Plaintiff was, during the years in suit, 1958, 1959 and 1960, the owner of equipment used in certain concessions at various fairs and carnivals. He also owned vehicles used in moving the concessions' equipment and supplies from location to location. The Plaintiff made the necessary contracts for space with the individuals or organizations—sometimes referred to as the auspices—who controlled or operated these fairs and carnivals.

Various individuals operated these concessions for the Plaintiff during the years in suit.

Plaintiff did not file employer's federal withholding, F.I.C.A. and F.U.T.A. tax returns for the periods during the years 1958, 1959 and 1960. Upon a determination by the Internal Revenue Service that the concession operators were the Plaintiff's employees, such returns were accordingly prepared in Plaintiff's behalf by the Service on May 16, 1962. As a result on July 26, 1963, federal withholding, F.I.C.A. and F.U.T.A. taxes in the amount of $14,634.90, together with applicable delinquency penalties in the amount of $3,658.73, for a total amount of $18,293.63, were duly and timely assessed by the Internal Revenue Service for the periods involved, and demands for payment were duly made.

On May 19, 1964, the Plaintiff made payments of $375.00 on such federal withholding, F.I.C.A. and F.U.T.A. taxes, but the balance of said assessments have not been paid. Thereafter, claims for refund of the amount paid by Plaintiff were timely filed, which claims have been disallowed. This suit was timely filed after six months from the filing of said claims for refund. In its answer to the complaint herein, the Defendant, upon the authorization of the Commissioner of Internal Revenue and the direction of the Attorney General of the United States, timely counterclaimed for the unpaid assessments involved in this suit, plus interest as provided by law.

"The parties agree that, under the applicable Internal Revenue laws, if the operator of the Plaintiff's concessions were his employees, the Plaintiff is liable for the taxes assessed for the years in suit, plus interest thereon, and the Defendant is entitled to judgment dismissing the Plaintiff's complaint with prejudice and to judgment on its counterclaim. The parties also agree that, if said operators were independent contractors, the Plaintiff is not liable for such taxes, and is entitled to recover the amount of his claim, and to judgment dismissing the Defendant's counterclaim.

Issue of fact which remains to be litigated:

Whether the operators of the Plaintiff's concessions during the years in suit were his employees or independent contractors and if employees whether the Plaintiff is subject to the delinquency penalties assessed."

In view of the fact that the only question for determination upon trial of the case was whether or not the persons described were employees, the case was submitted to the jury upon special interrogatory, which inquired:

"Do you find from the evidence that the operators of the concessions mentioned in evidence during the years 1958, 1959 and 1960, were employees of the plaintiff, as defined in this charge?

Answer (yes or no) ——"

The answer was "no".

The court properly charged the jury as to the definition of "employee" and "independent contractor".

The defendant did not introduce any evidence, and at the close of all the evidence, filed a motion for a directed verdict, setting up numerous grounds, the principal one of which was that the plaintiff had failed to prove that the persons operating the concessions owned by the plaintiff, were not employees during the periods involved, and the matter now before the court is that motion.

We believe that the motion must be sustained on the ground that there was no substantial evidence upon which the jury could have determined that the persons operating the concessions were not employees. There was practically no dispute. The plaintiff's own testimony, it seems to us, clearly indicates that the persons operating the concessions came within the definition of "employee" in the Act as defined in Treasury Regulation # 90, promulgated under Title IX

of the Social Security Act, Art. 205, which provides:

"Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done * * *. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor, not an employee.

"If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if two individuals in fact stand in the relation of employer and employee to each other, it is of no consequence that the employee is designated as a partner, coadventurer, agent, or independent contractor.

"The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists.

"Individuals performing services as independent contractors are not employees. Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees."

We believe the undisputed facts, as shown by the stipulation and evidence, clearly reveal that the plaintiff was the owner of numerous concessions ordinarily found at fairs or carnivals, an example of which would be shooting galleries, doll racks or other types of things where prizes were given for feats of skill or strength.

The plaintiff would contract with fair associations or carnival owners for concessionary rights, for which he paid a fee. He supplied all of the equipment necessary to set up these concessions, furnished the prizes and other things that were used in and about the concessions.

Sometime in the early years of his operation of these concessions, he entered into a written agreement with the persons who were to operate the concessions, which he called a "Lease Agreement". It provided, among other things, that for and in consideration of the sum of $1.00, the above space (which was described) and equipment to be used in the operation of the concession was leased by the second party, and he was to pay the lessor a certain percentage of the income. It was provided that the second party (lessee) was to furnish all necessary labor and other personnel for the operation of said concession, "and said employees or personnel shall in no wise be considered employees or agents of party of the first part and party of the first part shall have no control over the hiring or firing or supervision of said employees." It further carried a provision absolving the first party or lessor, from any liability for personal or property damage, indebtedness or injury to party of the second part or his employees.

The party of the first part agreed to pay all costs of transportation of the equipment from one location to another, all costs of repairs, replacements and maintenance of said equipment to be paid by both parties on the established percentage basis. Further, that in no

respect would the agreement create a partnership; it was purely on a rental basis.

Plaintiff was unusually frank in his testimony concerning his conduct of the business, and his record reflected with great clarity most of the details of his business. His testimony reveals that he had not caused the above described written agreement to be executed during any of the years in controversy here, but that he did have a verbal understanding with all operators of the concessions which was substantially in compliance with the terms and conditions of the written agreement; that it was definitely understood that he would not be liable for any tax or other obligation to them except a percentage of the amount earned by the concession.

However, the evidence also revealed that the plaintiff selected the people to operate these concessions, but they were placed in charge with the authority to conduct them in accordance with their own judgment. Nevertheless, he did purchase and provide the supplies, the prizes and he controlled all of the cash. At night the operator of each concession turned over to the plaintiff all of the cash which had been taken in during that day, and the next time the concession opened, he gave to the concessionnaire, sufficient amount of cash to operate the concession; he reserved the right to and did, from time to time, move the operator of one concession to another concession, in the event such concessionnaire was not adapted to the particular concession he was operating. He reserved the right to, and did, from time to time, discharge concessionnaires for failure to properly perform duties, when they were accused of stealing, or for failing to do their duty, or for drunkenness or for violation of any of the rules which were promulgated by the owners of the carnival or fair.

The operators of the concessions assisted in moving the equipment from one location to another, and those who stayed with the plaintiff during the Winter, were paid a small weekly wage, provided a place to sleep and their food. Those who did not continue to serve in the Winter quarters were paid the amount of commissions which they had earned in the operation of the concession and went on their way.

It was under this state of facts that the jury found that they were not employees.

In Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947, the Supreme Court said:

"In United States v. Silk, supra [331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757], we held that the relationship of employer-employee, which determines the liability for employment taxes under the Social Security Act was not to be determined solely by the idea of control which an alleged employer may or could exercise over the details of the service rendered to his business by the worker or workers. Obviously control is characteristically associated with the employer-employee relationship but in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service. In *Silk*, we pointed out that permanency of the relation, the skill required, the investment in the facilities for work and opportunities for profit or loss from the activities were also factors that should enter into judicial determination as to the coverage of the Social Security Act. It is the total situation that controls."

Clearly the plaintiff's intention in entering into the agreement with the operators of his concessions was to avoid payment of the tax, but where the association and the relationship between the parties are such as to constitute the employer-employee relationship, "Contracts, however 'skilfully devised,' Lucas v. Earl, 281 U.S. 111, 115, [50 S.Ct. 241, 74 L.Ed. 731], should not be permitted to shift tax liability as definitely fixed by the statutes." United States v. Silk, 331 U.S. 704, 715, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757.

Considering all of the plaintiff's evidence, and all of the reasonable inferences to be drawn therefrom, we are forced to the conclusion that there was no evidence to justify the jury's finding that the operators of the concessions were not plaintiff's employees, and the "Defendant's Motion for judgment notwithstanding the verdict" must be and is hereby sustained.