Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

MORGANTOWN YELLOW CAB COMPANY, INC., and Jerry Williams, Defendants.

Civ. A. No. 85–0134–C(K).

United States District Court, N.D. West Virginia, Clarksburg Division.

Sept. 8, 1988.

James B. Leonard and Ronald E. Gurka, Associate Regional Solicitors, U.S. Dept. of Labor, Arlington, Va., for plaintiff.

Franklin D. Cleckley, Morgantown, W.Va., and Ron L. Tucker, Fairmont, W.Va., for defendants.

## MEMORANDUM OPINION

KIDD, District Judge.

In this civil action, filed on June 25, 1985, the Secretary of Labor (Secretary) seeks to enjoin alleged violations of the provisions of Sections 6 and 11(c) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C.

§ 201, *et seq.* The Secretary also seeks liquidated damages in an amount equal to back wages, if any, found owing to defendants' employees.

The defendants, Morgantown Yellow Cab Company, Inc. (Cab Company) and Jerry Williams (Williams), are alleged to have violated the minimum wage provision of FLSA, 29 U.S.C. § 206, beginning on October 3, 1983.

Pursuant to the Order entered April 22, 1988, the parties have submitted the factual matters to the Court upon stipulations of fact, affidavits and exhibits. The parties have also filed cross-motions for summary judgment. Now, with all contested legal issues having been fully developed and briefed, the Court is ready to proceed with this action to disposition. Accordingly, the Court makes the following findings of fact:

## FINDINGS OF FACT

Williams is, and has been at all times since October 1, 1983, the President of the Yellow Cab Company. Since in or about October 3, 1983, Williams and the Cab Company have been operating and managing their taxicab service under lease agreements with their drivers. Williams has the authority to enter into and terminate taxicab lease agreements on behalf of the Cab Company. During this time period Williams had, in fact, done so. The taxicab service is run from offices located in Morgantown, West Virginia.

The stipulations of fact reveal that the taxicab drivers obtain approximately 95% of their fares from company radio dispatches. For the period in question here,[1] the drivers have not been required by the Cab Company or Williams to wait for fares at designated taxi stands or at any other specific place. The drivers are, however, entitled to accept walk-up fares, but these fares must be reported to the radio dispatcher at the time they are picked up.

The Cab Company and Williams make and preserve records of each trip taken by their drivers. These records, which are prepared by their radio dispatchers from radio reports received from the cab drivers, are called "green sheets" and contain information about the time, mileage, point of pick-up, point of discharge, number of passengers, and fare charged for each trip.

For most, if not all, of the time period involved here, the drivers were required to report to the dispatchers their location and where they were operating the taxicabs. Work schedules for the drivers are set by the defendants. The drivers could not alter their work schedules without obtaining a dispatcher's prior approval. The company policy was to require that any requested schedule change was to be made at least 24 hours in advance.

Under the lease agreement the drivers are charged a lease and mileage fee according to the schedule of "Lease Rates" set by the defendants. These lease rates vary according to factors and occurrences which affect the expectation of the number of fares to be collected.[2]

The Cab Company provides for service and repair of the taxicabs and equipment used by the drivers under the lease agreement. Williams and the Cab Company require the drivers to pay for all gasoline used during the shift. Apparently, it was defendants' policy that all gasoline used to refill the taxicabs was to be purchased from The Cab Company. In addition, all taxicabs leased were to carry the Cab Company's insignia.

At all times during the lease period the drivers were to have "exclusive and absolute control" of the taxicabs owned by Cab Company. The drivers were required under the lease agreement to operate their vehicles as taxicabs under all applicable regulations, laws and ordinances of the City of Morgantown.

Paragraph No. 2 of the Taxicab Lease Agreement states that: "[l]essee shall not be required to accept any radio dispatch call other than those which he may of his own volition desire to accept." This provi-

---

1. October 3, 1983 to present.

2. Paragraphs 6 and 7 of the Stipulations of Fact describe the factors considered in establishing variable lease rates.

sion also states that the lessee agree to be bonded by Rule 5.04 of the Motor Carrier Rules and Regulations of the Public Service Commission of West Virginia (PSC), which mandates that no person shall be denied taxicab service merely because that person desires transportation in a direction other than that in which a driver desires to operate.

Under West Virginia law, the Cab Company was only permitted to lease its taxicabs to its drivers by using the form lease prepared and distributed by PSC.[3] The form lease required by PSC was used by the defendants in operating their taxi service.

Paragraph 7 of the lease reads as follows:

[B]y this agreement, the Lessor and Lessee acknowledge and agree that there does not exist betwen [sic] them the relationship of employer-employee ... but that the relationship between the parties hereto is strictly Lessor–Lessee, the Lessee being an independent contractor, free from interference or control on the part of the Lessor.

## DISCUSSION

The threshold question in this case is whether the Cab Company's lessees/taxicab drivers are "employees" within Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1). Employee is defined as "any individual employed by an employer." Section 203(e)(1). The defendants strongly assert that their drivers are independent contractors, and as such, are not subject to FLSA.

■ In view of the remedial purposes of the FLSA, the determination of employment status turns on the "underlying economic realities" of the relationship between the taxicab drivers and the defendants. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). As such, the definition of an "employee" under the FLSA is broader than the common law definition. *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308

(5th Cir.1976), *cert. denied* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976).

The fact that the parties in this lease agreement have styled their relationship as that of lessor-lessee or principal and independent contractor is not dispositive on the employment issue. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir.1983). It has been stated that:

Where the work done, in its essence, follows the usual path of an employee, putting on an "independent contractor" label does not take the worker from the protection of the Act.

*Rutherford*, 331 U.S. at 729, 67 S.Ct. at 1476 (footnote omitted).

■ Courts have identified and utilized several factors in distinguishing employees from independent contractors. These factors include:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
4) whether the service rendered requires a special skill;
5) the degree of permanence of the working relationship; and
6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir.1979) (footnote omitted); *see also Donovan v. Sureway Cleaners*, 656 F.2d 1368 (9th Cir.1981).

■ It is well-established that "[n]either the presence nor the absence of an individual factor is determinative." *Donovan*, 656 F.2d at 1370. The existence of an employer-employee relationship depends "upon the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730, 67 S.Ct. at 1477. When, as a matter of economic reality, individuals "are dependant upon the business to which they render service"

3. *See* PSC, Rules and Regulations § 5.08.

they are employees within the meaning of the FLSA. *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947).

## CONCLUSIONS OF LAW

█ In following the guidance provided by Circuit Court for the District of Columbia Circuit in *Local 777, Democratic Union Organizing Committee v. N.L.R.B.,* 603 F.2d 862 (D.C.Cir.1978); *City Cab Company of Orlando, Inc. v. N.L.R.B.,* 628 F.2d 261 (D.C.Cir.1980), and upon consideration of various factors discussed herein as applied to the facts, the Court concludes as a matter of economic reality, taxicab drivers are employees of the Cab Company within the definition in the FLSA, and not independent contractors.[4]

█ The Court further concludes that based upon the aforementioned authority, as well as the legislative history of the Act, the business conducted by the defendants does not fall within the definition of a "retail or service establishment" as defined in 29 U.S.C. § 213(a)(2); therefore, the total sales volume required to bring the defendants within the parameters of the Act is $250,000, 29 U.S.C. § 203(s)(1) (2).

In light of the Court's ruling, there still remain two issues to be determined with respect to the parties' cross-motions for summary judgment. First, whether the total sales volume of the defendants meets the required jurisdictional amount of $250,-000, and second, whether the conduct of the defendant comes within the Portal–To–Portal Act as set forth in 29 U.S.C. § 259.

It appears to the Court that additional time should be granted to the parties to supplement the factual record and to provide any additional legal argument regarding these specific issues.

It is, accordingly, ORDERED that the parties shall file any additional information to the Court with respect to the above referenced issues within sixty days of the entry of this Memorandum Opinion.

The Clerk is directed to transmit certified copies of this Memorandum Opinion to counsel of record herein.

---

**4.** The degree of control retained by the defendants, including the requiring of contractual reporting of location, the setting of work schedules, and the requirement that gas be purchased from the Cab Company, is deemed to be the single most important factor underlying this Court's holding.