MURNAGHAN, Circuit Judge,
dissenting:
It is a difficult line to draw between (1) facts which are disputed and (2) a set of facts outlining what is crystal clear. Here, in granting summary judgment in the hospital’s favor and thereby foreclosing any resolution by the factfinder of the issue: employee or independent contractor, the majority has crossed that difficult line and gathered up for itself resolution of a disputed fact question. The majority relies on the evidence, which is no doubt strong, in the hospital’s favor but gives no weight to facts favoring Cilecek which are of sufficient substance to make the issue a disputed one.
I.
During his association with the Inova facilities, Dr. Cilecek considered himself a house physician on staff, not merely a doctor with privileges at the two facilities. The Fairfax Hospital Medical Staff Bylaws and Rules and Regulations require that “[t]he acts performed by the House Physician shall be at the direction and under the supervision of the chairman of the clinical department to which the individual has been assigned.” Dr. Cilecek’s department chairman was Dr. Thom Mayer. Defendant Joan Miles served as administrator of ACCESS. Both Mayer and Miles had the power to enforce Dr. Cilecek’s compliance by initiating corrective action against him, including additional supervision, suspension, and termination. After the entry of Emergency Physicians of Northern Virginia (EPNV), Dr. Cilecek continued to work at the Inova hospitals under the same terms and conditions, except that his paycheck and insurance were provided by EPNV, instead of Inova.
In August 1991, Dr. Cilecek went to work for another medical group located in North Stafford, Virginia. In the fall of 1992, however, EPNV offered Dr. Cilecek more money to work full-time at the Fairfax Hospital and ACCESS. Dr. Cilecek accepted Dr. Mayer’s offer in a letter agreement in which Dr. Cilecek requested that he be deemed an independent contractor, and Dr. Mayer agreed. Such an agreement of the parties cannot overcome the actual facts. Under that agreement, Dr. Cilecek actually worked an average of 130-140 hours per month. EPNV paid Dr. Cilecek $90.00/hour and also supplied his medical malpractice insurance.
II.
The common law standard focuses on the degree of the employer’s control over the individual. Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219-220 (4th Cir.1993). The “economic realities” test examines the extent to which the individuals “who as a matter of economic reality are dependent upon the business to which they render service.” Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947).
The Fourth Circuit follows the hybrid approach, which combines elements of both the common law and “economic realities” tests. See Haavistola, 6 F.3d at 220; Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir.1983). Under the hybrid approach, the court’s inquiry must focus on the following factors:
(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the “employer” or the individual furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice *264 and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the “employer”; (9) whether the worker accumulates retirement benefits; (10) whether the “employer” pays social security taxes; and (11) the intention of the parties.
Haavistola, 6 F.3d at 222 n. 4 (citing Garrett, 721 F.2d at 982).
A majority of those factors points to Dr. Cilecik as an employee. Dr. Cilecek argues that his supervision, setting of his schedule, and how his duties differed from other doctors were all in genuine dispute. Dr. Cile-cek, and the amicus (the Equal Employment Opportunities Commission) point out that Dr. Cilecek presented evidence that he was considered a “house physician” under Inova’s Bylaws. Those Bylaws stated that house physicians work under the “direction and supervision” of either (1) the director of their clinical department; or (2) staff physicians for whom work is done. Under either prong, Dr. Cilecek states that person was Dr. Mayer, who was both the Director of the Department of Emergency Medicine for Fairfax Hospital and the staff physician for whom Dr. Cilecek worked.
Moreover, Dr. Cilecek presented evidence that he was required to work under the supervision of Dr. Mayer, and that Dr. Mayer’s supervision of him was pervasive. In his affidavit attached to his opposition to Inova’s summary judgment motion, Dr. Cilecek contends that Inova controlled the way Dr. Cile-cek performed his work, including how he took medical histories, conducted physical exams, tests and other procedures, made patient progress notes, issued patient medical orders, handled surgical procedures, ordered and administered medications and medical devices, obtained consultations and referrals, and made entries in medical records. Dr. Cilecek also states that Miles, Inova’s administrator, controlled how he performed his work, such as when to conduct patient physical examinations, and how to handle prescription pads.
In addition, Dr. Cilecek argues that he presented evidence that Inova and EPNV set and unilaterally changed his hours, as well as evidence showing that his duties were the same as the other doctors at the hospital. Dr. Cilecek states that he was required to submit a requested schedule, and his schedule would either be approved as submitted or altered, thus he was not free to set his own hours. Furthermore, Dr. Cilecek stated in his affidavit that if he wanted to work fewer hours in a month he obtained the approval of his superior, Dr. Mayer.
With respect to the same duties issue, Dr. Cilecek contends that the record shows that Dr. Cilecek was required to submit his requested schedule for work, the same as other emergency physicians, Inova’s Bylaws required every “house physician” to perform the same duties, observe the same rules and procedures, operate under the same supervision, meet the same performance standards, and answer to the same disciplinary procedure. Finally, Inova and EPNV provided the workplace and equipment.
Here, disputes abound over the issues of Dr. Cilecek’s supervision by Mayer and the manner in which Dr. Cilecek’s work schedule was set, for example, whether Dr. Cilecek could himself provide his own schedule, or whether Mayer could alter the schedule. The choice of the term “independent contractor” by Cilecek to describe himself, while the factfinder might pay it attention, was by no means controlling. Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).
In the instant case, the district court granted summary judgment in favor of EPNV and Inova pre-discovery, that is before these disputed issues could even be explored. The majority opinion usurps the role of the factfinder and resolves disputed factual issues in EPNV and Inova’s favor. It appears to me that relevant facts were in dispute, making summary judgment inappropriate and ill-advised. Consequently, I dissent.