**ELECTROLUX HOLDINGS, INC. and Electrolux Home Products, Inc.,**
Plaintiffs,

v.

**The UNITED STATES, Defendant.**

**No. 05–450T.**

United States Court of Federal Claims.

June 22, 2006.

Terrence G. Perris and Steven A. Friedman, Squire, Sanders & Dempsey, L.L.P., Cleveland, Ohio, counsel for Plaintiffs.

Bart D. Jeffress, United States Department of Justice, Tax Division, Washington, D.C., counsel for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER**

BRADEN, Judge.

This case presents the United States Court of Federal Claims with a question of first impression concerning the construction and application of 26 U.S.C. § 6511(d)(2)(A), a special exception to 26 U.S.C. § 6511(a), the general statute of limitations for filing a federal tax refund claim. For the reasons discussed herein, the court has determined that this special exception is not applicable in this case and, therefore, the Complaint must be dismissed for failure to comply with the jurisdiction prerequisite of filing a timely refund claim.

**RELEVANT FACTS[1]**

For several years, up to and including part of the 1994 tax year, Plaintiffs' predecessor-in-interest, White Consolidated Industries, Inc. ("WCI"), owned all of the stock of Blaw

---

1. The relevant facts recited herein were derived from: the April 7, 2005 Complaint ("Compl.") and Exhibits thereto; the Government's August 5, 2005 Motion to Dismiss ("Gov't Mot.") and Appendices thereto; Plaintiffs' October 14, 2005 Response ("Pls.Resp."); the Government's November 9, 2005 Reply ("Gov't Reply"); the January 27, 2006 Oral Argument ("TR" 1–82); the Government's March 24, 2006 Supplemental Brief ("Gov't Supp. Br."); Plaintiffs' March 27, 2006 Supplemental Brief ("Pls.Supp.Br."); the Government's April 5, 2006 Second Supplemental Brief ("Gov't Second Supp. Br."); and Plaintiffs' April 27, 2006 Reply thereto ("Pls.Reply").

Knox Construction Equipment Corporation.[2] *See* Compl. ¶ 8. In tax year 1994, WCI sold all of this stock and realized a $53,821,916.00 "long-term capital loss." [3] *Id.* ¶ 9. WCI, however, was not able to deduct all of this long-term capital loss in that year, because Treasury Regulation § 1.1502–20 ("the Loss Disallowance Rule") prohibited a portion from being deducted. *See* 26 C.F.R. § 1.1502–20 (1994) (disallowing the "duplicated loss amount" from the sale of a former subsidiary's assets when a consolidated group sells the subsidiary's stock); *see generally* MARTIN D. GINSBURG AND JACKS. LEVIN, MERGERS, ACQUISITIONS, AND BUYOUTS: A TRANSACTIONAL ANALYSIS OF THE GOVERNING TAX, LEGAL, AND ACCOUNTING CONSIDERATIONS ("GINSBURG & LEVIN") ¶¶ 212.4.5, 212.4.5. 1(1)-(4) (Jan. 2006) (providing a comprehensive analysis of the complicated mechanics of the Loss Disallowance Rule).

Sometime thereafter, WCI concluded that the Loss Disallowance Rule was invalid. *See* Compl. ¶ 11. As a result, WCI wanted to deduct the remainder of the long-term capital loss, but did not have any "long-term capital gain" [4] for the 1994 tax year that previously was not offset. *Id.* ¶¶ 11, 12. The unused portion of the long-term capital loss, however, provided WCI with a "net long-term capital loss" [5] for the 1994 tax year that WCI could "carryback" [6] to an earlier tax year or "carryover" [7] to a subsequent tax year, if the requirements of 26 U.S.C. § 1212(a)(1) were satisfied. *See* 26 U.S.C. § 1212(a)(1) (allowing a corporation with a "net capital loss" [8] to carryback any such loss to each of the three tax years immediately preceding the year in which the loss was incurred and to carryover any such loss to each of the five tax years immediately succeeding the year in which the loss was incurred).

On December 31, 1999, WCI filed amended returns (Form 1120X) for the tax years 1993, 1995, 1996, 1997, and 1998, as a first step toward qualifying for the tax benefits afforded by 26 U.S.C. § 1212(a)(1). *See* Compl. ¶¶ 12, 13, 16. Although 26 U.S.C. § 1212(a)(1)(A) permitted WCI to carryback any net capital loss to tax years 1991 and 1992, WCI had no capital gain in those years against which the net capital loss could be offset. *See* TR 47.

Thereafter, WCI entered into an agreement with the Commissioner of Internal Rev-

---

**2.** Until April 1999, WCI was the common parent of a consolidated group of corporations, including Electrolux Home Products, Inc. ("Electrolux Home Products"). *See* Compl. ¶¶ 3–4. In April 1999, Electrolux Holdings, Inc. ("Electrolux Holdings") acquired all of the stock of WCI and succeeded WCI as the parent of a consolidated group of corporations. *Id.* ¶ 5. Electrolux Holdings became the common parent of this group. *Id.* ¶ 3. In January 2002, WCI, a wholly-owned subsidiary of Electrolux Holdings, was merged into Electrolux Home Products, which at that time also was a wholly-owned subsidiary of Electrolux Holdings. *Id.* ¶ 6.

**3.** Congress defined a "long-term capital loss" as a "loss from the sale or exchange of a capital asset held for more than 1 year, if and to the extent that such loss is taken into account in computing taxable income." 26 U.S.C. § 1222(4).

**4.** Congress defined a "long-term capital gain" as a "gain from the sale or exchange of a capital asset held for more than 1 year, if and to the extent [that] such gain is taken into account in computing gross income." 26 U.S.C. § 1222(3).

**5.** Congress defined a "net long-term capital loss" as the "excess of long-term capital losses for the taxable year over the long-term capital gains for such year." 26 U.S.C. § 1222(8).

**6.** *See* BLACK'S LAW DICTIONARY (8th ed. 2004) ("BLACK'S") at 227 (defining a "carryback" as "[a]n income-tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in an earlier period (usu. the previous three years)."); *see also* ROBERT SELLERS SMITH, WEST'S TAX LAW DICTIONARY (2006 ed.) ("WEST'S TAX LAW DICTIONARY") at 124; FRED W. PEEL, JR., UNDERSTANDING THE FEDERAL INCOME TAX: A LAWYER'S GUIDE TO THE CODE AND ITS PROVISIONS (1988) ("PEEL") at 110.

**7.** *See* BLACK'S at 227 (defining a "carryover" as "[a]n income-tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in a later period (usu. the next five years)."); *see also* WEST'S TAX LAW DICTIONARY at 124; PEEL at 110.

**8.** Congress defined a "net capital loss" as the "excess of the losses from sales or exchanges of capital assets over the sum allowed under section 1211[.]" 26 U.S.C. § 1222(10). In the case of a corporation, short-term capital losses under 26 U.S.C. § 1212 are excluded from "net capital loss." *Id.*

enue ("Commissioner"), pursuant to 26 U.S.C. §§ 6501(c)(4), 6511(c)(1),[9] to extend the period of limitations applicable to WCI's 1994 tax year to December 31, 1999. *See* Compl. ¶ 14; *see also* Gov't Mot. at 1. Pursuant to that agreement and by operation of law, the limitations period for WCI to file a federal tax refund claim for the 1994 tax year did not expire until June 30, 2000, six months after December 31, 1999, *i.e.*, the date of the extension. *See* 26 U.S.C. § 6511(c)(1) (subject to certain limitations, refund claims on an assessment may be filed six months after the expiration of an agreed extension of the period of limitation).

On July 6, 2001, the United States Court of Appeals for the Federal Circuit held that the Loss Disallowance Rule exceeded the authority that Congress delegated to the Secretary of Treasury and, in turn, to the Commissioner, pursuant to 26 U.S.C. § 1502. *See Rite Aid Corp. v. United States*, 255 F.3d 1357, 1360 (Fed.Cir.2001), *reh'g en banc denied* (2001), ("In our view, there is no requirement that a taxpayer acquiesce in a regulation promulgated outside the authority delegated by Congress.") (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

As a result of the *Rite Aid* decision, the Commissioner allowed WCI to deduct the remainder of the net capital loss in tax year 1994. *See* Compl. ¶ 17; *see also* 26 C.F.R.

§ 1.1502–20T (2002) (adopting new rules governing loss disallowance on the sale of stock by a member of a consolidated group in light of *Rite Aid*). The Commissioner also granted WCI certain refunds claimed resulting from the carryback and carryover of the 1994 net capital loss to the tax years 1993,[10] 1996, 1997, and 1998. *See* Compl. ¶ 17; *see also* Gov't Mot. at 2. The Commissioner, however, disallowed $1,453,848.00 of the refund claimed for the 1995 tax year, because WCI's December 31, 1999 amended return was untimely, as the general statute of limitations for filing expired on September 16, 1999.[11] *See* 26 U.S.C. § 6511(a); *see also* Compl. ¶¶ 16–19; *see also* Gov't Mot. at 2.

On April 10, 2003, Electrolux Home Products, WCI's successor-in-interest, executed an Acceptance of Proposed Disallowance of Claim for Refund or Credit (Form 3363) at the request of the Commissioner. *See* Compl. ¶ 19; *see also* Compl. Ex. B (the April 10, 2003 Form 3363). By executing Form 3363, Electrolux Home Products agreed that the IRS would partially disallow the refund claim for the tax year 1995 and would not continue to process the claim, so that Electrolux Home Products could file a suit for a federal tax refund in the United States Court of Federal Claims. *See* Compl. Ex. B.[12]

---

**9.** Congress authorized the Commissioner to enter into an agreement with a taxpayer to extend the period of limitations for assessing a tax against the taxpayer. If such an agreement is forged, the limitations period for the taxpayer to file a "claim for credit or refund or for making credit or refund if no claim is filed, . . . shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement [of the Commissioner and the taxpayer] . . . under section 6501(c)(4)." 26 U.S.C. § 6511(c)(1).

**10.** The statute of limitations for filing a federal tax refund claim with the Secretary of the Treasury for the 1993 tax year expired in 1996. *See* 26 U.S.C. § 6511(a). A refund claim for the 1993 tax year, however, potentially was viable under another provision of the Tax Code. *See* 26 U.S.C. § 6511(d)(2)(A) ("If the claim for credit or refund *relates to an overpayment attributable to* . . . *a capital loss carryback* . . . the period [of limitation] shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback, or the period prescribed in [§ 6511(c)] in respect of such taxable year, whichever expires later." (emphasis added)). The record does not reflect whether the Commissioner's decision in this situation was based on 26 U.S.C. § 6511(d)(2)(A).

**11.** The record also is not clear as to whether the general statute of limitations, set forth in 26 U.S.C. § 6511(a), applicable to Plaintiffs' claim expired on September 15, 1999 or September 16, 1999. *Compare* Compl. ¶ 18, *with* Mot. to Dismiss App. A (Jeffress Decl., Ex. 1, App. at 4). This difference, however, is not relevant to the court's resolution of the Government's Motion to Dismiss.

**12.** In 2004, Congress amended 26 U.S.C. § 1502 to overrule *Rite Aid* and authorized the IRS to "override" the provisions relating to consolidated return taxpayers. *See* GINSBURG & LEVIN § 212.4.5.1 at 2–357.

## PROCEDURAL BACKGROUND

On April 7, 2005, Plaintiffs filed a Complaint in the United States Court of Federal Claims, seeking a federal tax refund of $1,453,848.00 for the tax year 1995. On August 5, 2005, the Defendant ("the Government") filed a Motion to Dismiss, pursuant to RCFC 12(b)(1), asserting that Plaintiffs' federal tax refund claim for the 1995 tax year was untimely, because it was filed on December 31, 1999. On October 14, 2005, Plaintiffs filed a Response thereto and a Motion for an Oral Argument. On November 9, 2005, the Government filed a Reply.

On January 27, 2006, the court held an oral argument. On March 24, 2006, the Government filed a Supplemental Brief. On March 27, 2006, Plaintiffs filed a Supplemental Brief. On April 5, 2006, by leave of the court, the Government filed a Second Supplemental Brief. On April 27, 2006, by leave of the court, Plaintiffs filed a Reply to the Government's Second Supplemental Brief.

## DISCUSSION

### A. The Jurisdiction Of The United States Court Of Federal Claims Over A Tax Refund Suit.

The United States Court of Federal Claims has jurisdiction, pursuant to 28 U.S.C. § 1346(a)(1), to adjudicate federal tax refund suits. *See New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1558 (Fed.Cir. 1997) (reaffirming the jurisdiction of the United States Court of Federal Claims over a suit concerning a federal tax refund). To invoke this jurisdiction, however, the taxpayer also must meet certain prerequisites. First, the taxpayer must comply with the statute of limitations set forth in 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed *within six years after such claim first accrues."* (emphasis added)).

Second, the taxpayer must file a timely federal tax refund claim for overpayment of taxes with the Secretary of the Treasury. *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until *a claim for refund or credit* has been duly *filed with the Secretary[.]"* (emphasis added)); *see also Greene v. United States,* 191 F.3d 1341, 1343 (Fed.Cir.1999) ("[I]t is a well-established rule that a timely, sufficient claim for a[tax] refund is a jurisdictional prerequisite to a refund suit.") (quoting *Sun Chem. Corp. v. United States,* 698 F.2d 1203, 1206 (Fed. Cir.1983)). A federal tax refund claim must be filed either: within three years of filing the return; or within two years of paying the tax, whichever is later. *See* 26 U.S.C. § 6511(a) (the general statute of limitations for filing a federal tax refund claim).[13] The Tax Code, however, provides for a special exception to 26 U.S.C. § 6511(a), which extends the general statute of limitations for filing a federal tax refund claim:

> If the claim for credit or refund *relates to an overpayment attributable to* a net operating loss carryback or *a capital loss carryback,* in lieu of the 3–year period of limitation prescribed in [§ 6511(a)], the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback, or the period prescribed in [§ 6511(c)] in respect of such taxable year, whichever expires later. In the case of such a claim, the amount of the credit or refund may exceed the portion of the tax paid within the period provided in subsection [§ 6511(b)(2) or (c)], whichever is applicable, to the extent of the amount of

---

**13.** Section 6511(a) provides:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return *shall be filed by the taxpayer within 3 years from the time the return was filed or 2*

> *years from the time the tax was paid,* whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.
>
> 26 U.S.C. § 6511(a) (emphasis added).

the overpayment attributable to such carryback.

26 U.S.C. § 6511(d)(2)(A) (emphasis added).

Third, the taxpayer must pay the IRS the entire tax liability alleged to be due, plus any penalties and interest. *See Flora v. United States,* 362 U.S. 145, 154, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (a taxpayer must pay the full amount of income tax deficiency assessed before challenging its correctness in a refund forum); *see also Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir.1993) ("The full payment requirement of [26 U.S.C. § ] 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims[.]").

In this case, the Complaint was filed on April 7, 2005, within the six-years limitations period required by 26 U.S.C. § 2501. *See* Compl. ¶ 1. In addition, the Complaint alleges that Plaintiffs paid the federal taxes due in the 1995 tax year prior to filing the Complaint. *Id.* ¶¶ 16, 23. The Complaint alleges that Plaintiffs submitted a timely federal tax refund claim, pursuant to the special exception set forth in 26 U.S.C. § 6511(d)(2)(A). *Id.* ¶¶ 21, 22. The Government, however, contends that the federal tax refund claim was not timely.

**B. Standing.**

Standing is a component of jurisdiction that the court has the authority to address *sua sponte. See Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*"). Federal trial courts also have been advised to "decide standing questions at the outset of a case. That order of decision (first jurisdiction then the merits) helps better to restrict the use of the federal courts to those adversarial disputes that Article III defines as the federal judiciary's business." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 111, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (Breyer, J. concurring). In this case, Plaintiffs, as the parties invoking federal jurisdiction, have the burden of proof and persuasion to satisfy the constitutional requirements of Article III standing. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (holding that the burden is on the party seeking to exercise jurisdiction by clearly alleging facts sufficient to establish jurisdiction).

In April 1999, Electrolux Holdings acquired all of the stock of WCI, which had been the common parent of a consolidated group of corporations that included Electrolux Home Products, and thereby succeeded WCI as the common parent. *See* Compl. ¶ 5. In January 2002, WCI, then a wholly-owned subsidiary of Electrolux Holdings, merged into Electrolux Home Products, which, also was a wholly-owned subsidiary of Electrolux Holdings. *Id.* ¶ 6. Therefore, the Complaint has alleged sufficient facts to establish Electrolux Holdings' standing to assert a federal tax refund claim on behalf of the consolidated tax entity. *Id.* ¶ 3. In addition, the Complaint has alleged sufficient facts to establish that Electrolux Home Products, as the successor in interest to WCI, has standing to assert a federal tax refund claim on behalf of WCI. *Id.* ¶ 6.

**C. Standard Of Review Governing A Motion To Dismiss For Lack Of Jurisdiction And Concerning Statutory Interpretation.**

In ruling on a motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), the court must presume undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In deciding a motion to dismiss on jurisdictional grounds, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Plaintiffs, however, bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's ... jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

In this case, the Government's Motion to Dismiss asserts that Plaintiffs do not qualify for the special exception to the 26 U.S.C. § 6511(a), set forth in 26 U.S.C.

§ 6511(d)(2)(A), and, therefore, have not satisfied 26 U.S.C. § 7422(a)—the jurisdictional prerequisite of filing a timely federal tax refund claim. Whether Plaintiffs' claim is governed by the exception to 26 U.S.C. § 6511(a), set forth in 26 U.S.C. § 6511(d)(2)(A), is a question of statutory interpretation.

The United States Court of Appeals for the Federal Circuit held in *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320 (Fed.Cir.2005) that "[s]tatutory interpretation begins with the language of the statute." *Id.* at 1328; *see also Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1347 (Fed.Cir.2005) ("[S]tatutory interpretation is a 'holistic endeavor' that requires consideration of a statutory scheme in its entirety" (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988))) (internal quotations omitted); *see also Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir.2004) ("A court derives the plain meaning of the statute from its text and structure.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)).

**D. The Court's Resolution Of The Government's Motion To Dismiss.**

**1. 26 U.S.C. § 6511(d)(2)(A) Applies Only To An Overpayment Of Federal Tax "Attributable To" A "Capital Loss Carryback."**

The general statute of limitations specifying the time in which the taxpayer must file a return requires that the return be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). An exception to this limitation period is set forth in 26 U.S.C. § 6511(d)(2)(A) and commences on the date that the return for the "net capital loss" year is due to be filed. *See* 26 U.S.C. § 6511(d)(2)(A). To qualify for this limitations period, however, the claimed overpayment of federal tax must be *"attributable to* ... a capital loss carryback[.]" *Id.* (emphasis added).

**a. A "Capital Loss Carryback."**

The court's initial inquiry concerns whether the federal tax refund claim in this case concerns a "capital loss carryback." Congress did not define "capital loss carryback," however, as previously discussed, Congress defined "net long-term capital loss" as the "excess of long-term capital losses for the taxable year over the long-term capital gains for such year." 26 U.S.C. § 1222(8). A "carryback" has been defined as "an income tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken for an earlier period[.]" BLACK'S at 227.

Section 1212 of the Tax Code authorizes a corporation to "carryback" a "net capital loss" under certain limitations.[14]

The Government argues that 26 U.S.C. § 1212(a) establishes a single iterative pro-

---

**14.** The relevant text of Section 1212 states:

If a corporation has a net capital loss for any taxable year (hereinafter ... "loss year"), the amount thereof shall be—

(A) *a capital loss carryback to each of the 3 taxable years preceding the loss year,* but only to the extent—

(i) such loss is not attributable to a foreign expropriation capital loss, and

(ii) the carryback of such loss does not increase or produce a net operating loss ... for the taxable year to which it is being carried back;

\* \* \*

and shall be treated as a short-term capital loss in each such taxable year. *The entire amount of the net capital loss for any taxable year shall be carried to the earliest of the taxable years to which such loss may be carried, and the portion of such loss which shall be carried to each of* the other taxable years to which such loss may be carried shall be the excess, if any, of such loss over the total of the capital gain net income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the capital gain net income for any such prior taxable year shall be computed without regard to the net capital loss for the loss year or for any taxable year thereafter. In the case of any net capital loss which cannot be carried back in full to a preceding taxable year by reason of clause (ii) of [§ 1212(a)(1)(A)], the capital gain net income for such prior taxable year shall in no case be treated as greater than the amount of such loss which can be carried back to such preceding taxable year upon the application of such clause (ii).

26 U.S.C. § 1212(a)(1) (emphasis added; footnote omitted).

cess, pursuant to which a taxpayer may elect to carryback (or carryover) a "net capital loss," with the amount to be carried back (or carried over) so that the "net capital loss" decreases, as it is applied to offset any capital gain in an earlier qualifying tax year. *See* Gov't Mot. at 8. In other words, 26 U.S.C. § 1212(a) "conceptualizes net capital loss for any taxable year ... as an accumulation of loss that moves through the taxable years to which it may be carried (starting with the earliest), leaving loss in each such year to the extent of that year's capital gain net income until no loss remains." *Id.*

Plaintiffs analogize 26 U.S.C. § 1212(a) to the collapse of a series of dominoes, setting in motion a "chain reaction" as a "net capital loss" is applied over an eight year period, commencing with the earliest qualifying tax year and proceeding to the latest. *See* Pls. Resp. at 1–7. Plaintiffs contend that the issue of whether any of the "net capital loss" may be "carried to each of the other taxable years—including the amount of such loss that may be carried over to future taxable years—depend[s] on how much of the capital loss is used in each of the carryback years." *Id.* at 2–3. In short, the amount of the "net capital loss" available to be carried back or

carried over solely is dependent upon the amount utilized in prior tax years. *Id.*

The text of 26 U.S.C. § 1212(a) provides that the entire amount of a "net capital loss" can be "carried to" to "each" of the three years preceding the net capital loss year, starting with the earliest year that has an offsetting capital gain. *See* 26 U.S.C. § 1212(a)(1)(A). If any "net capital loss" remains, it is carried over to "each" of the five years succeeding the year in which the "net capital loss" was incurred that have an offsetting capital gain. *See* 26 U.S.C. § 1212(a)(1)(B); *see generally* 26 U.S.C. § 1212(a)(1) ("The entire amount of the net capital loss for any taxable year shall be carried to the earliest of the taxable years to which such loss may be carried, and the portion of such loss which shall be carried to each of the other taxable years to which such loss may be carried shall be the excess, if any, of such loss over the total of the capital gain net income for each of the prior taxable years to which such loss may be carried.").

The following illustration shows the sequence in which a "net capital loss" is applied to offset capital gain:

A "net capital loss" carryover for a tax year is the amount of the taxpayer's unused net capital loss that still remains after the taxpayer has allocated any "net capital loss" to "each" of the earlier years, which the taxpayer can use to offset any capital gain in succeeding tax years. *Id.* Therefore, if the

taxpayer is unable to carryback the "net capital loss" to a preceding year, because there is no capital gain to offset, the taxpayer nevertheless may carryover the "net capital loss" to each of the five successive years, after the year in which the "net capital loss"

was incurred, as depicted in the illustration below:

The carryback year affects only the "net capital loss," or portion thereof, that is applied in that year to offset any capital gain. Under this statutory scheme, a "net capital loss" carryover constitutes only the residual amount of "net capital loss" that is *not* offset by any previous carryover.

#### b. "Attributable To."

Plaintiffs argue that the United States Court of Appeals for the Seventh Circuit decision in *First Chicago Corp. v. Comm'r*, 742 F.2d 1102, 1103 (7th Cir.1984) and a federal district court's decision in *Marshalltown Sav. & Loan Ass'n v. United States*, No. 4–91–CV–10003, 1991 WL 331376, 1991 U.S. Dist. LEXIS 19428 (S.D.Iowa 1991) support their position that the "net capital loss" carryover to tax year 1995 is "attributable to" both the 1994 net capital loss and the

carryback of the net capital loss from 1994 to 1993. *See* Pls. Resp. at 8–13.

In *First Chicago*, the taxpayer claimed and was allowed to carryback a capital loss and an investment credit from the 1974 tax year to the 1971 tax year. *See First Chicago Corp. v. Comm'r*, 80 T.C. 648, 649–50, 1983 WL 14814 (1983) *(en banc)*. The IRS later discovered a deficiency for tax year 1972, as a consequence of the taxpayer failing to adjust its minimum tax carryover for 1972 to account for the decrease in the 1971 income tax. *Id.* at 650–51. The IRS issued a notice of deficiency. *Id.* at 651. Plaintiff then filed an action in the United States Tax Court, asserting that the statute of limitations for assessment of a deficiency for the 1972 tax year had expired. *Id.; see also* 26 U.S.C. 6501(a). The IRS countered that the relevant limitations period had not expired, because 26 U.S.C. §§ 6501(h), (j) governed.[15]

---

15. At the time, Sections 6501(h) and (j) provided for an extension of the limitations period for assessing a deficiency "attributable to" a net operating loss carryback, a capital loss carryback, or an investment credit carryback:

(h) Net operating loss carryback or capital loss carrybacks. In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2) [now section 6213(b)(3)]), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed.
\* \* \*

(j) Investment credit carrybacks. In the case of a deficiency attributable to the application to the taxpayer of an investment credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)) [now section 6213(b)(3)], such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused investment credit which results in such carryback may be assessed, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, at any time before the expiration of the period within which a

*Id.* at 652. The United States Tax Court held that 26 U.S.C. §§ 6501(h), (j) were not applicable, because "there is no basis for any contention that the term 'carrybacks' used in the statute extending the period of assessment should be construed to include 'carryovers' as well." *Id.* at 652–55. The Honorable Meade Whitaker of the United States Tax Court, however, authored a dissenting opinion explaining that 26 U.S.C. §§ 6501(h)(j) governed, because the 1972 increased tax "can be 'traced directly to' the carrybacks from 1974[.]" *Id.* at 665 (Whitaker, J. dissenting). On appeal, the United States Court of Appeals for the Seventh Circuit reversed the majority opinion of the United States Tax Court and adopted Judge Whitaker's dissenting opinion as the opinion of the federal appellate court, holding that deficiency assessment was timely under 26 U.S.C. § 6501(h). *See First Chicago,* 742 F.2d at 1103.

In *Marshalltown Sav. & Loan Ass'n.,* a taxpayer alleged that the carryback of certain net operating losses from 1985 to 1979 and a resultant carryover of investment tax credits from 1979 to 1980 entitled the taxpayer to a federal tax refund in the 1980 tax year. *See Marshalltown Sav. & Loan Ass'n.,* 1991 WL 331376, at *1, 1991 U.S. Dist. LEXIS 19428, at *1. The United States District Court for the Southern District of Iowa held that the taxpayer's claim for the 1980 tax year was timely under 26 U.S.C. § 6511(d)(2), because "the section 6511(a) statutory limitation had expired when the net operating loss become known in 1986. The 1995 net operating loss was carried back to the 1979 tax year which, in turn, created an investment tax credit for 1980 taxes and, therefore, entitlement to a refund in 1980. Under section 6511(d)(2)(A), Plaintiff had until March 15, 1989, to file for the 1979 as well as the 1980 refund." *See Marshalltown Sav. & Loan Ass'n.,* 1991 WL 331376, at *2, 1991 U.S. Dist. LEXIS 19428, at *3–*4.

*First Chicago and Marshalltown Sav. & Loan Ass'n* are factually distinguishable from this case. In *First Chicago,* the carrybacks from 1971 to 1974 triggered a tax deficiency in 1972, because the taxpayer failed to adjust the tax carryover for 1972 to account for a decrease in the 1971 income tax. In *Marshalltown Sav. & Loan Ass'n,* the carryback of a net operating loss from 1985 to 1979 triggered a carryover of investment tax credits from 1979 to 1980. *First Chicago* and *Marshalltown Sav. & Loan Ass'n.,* therefore, concern an initial carryback of net losses that triggered entirely different tax mechanisms, i.e., in *First Chicago,* a tax deficiency; and, in *Marshalltown Sav. & Loan Ass'n,* an investment tax credit. Accordingly, the court does not consider the holdings in *First Chicago* or *Marshalltown Sav. & Loan Ass'n* relevant to the statutory inquiry in this case, because the carryback at issued here did not trigger a different tax mechanism.

In determining the scope of another portion of the Tax Code, the United States Supreme Court defined "attributable to" to mean "caused or generated by[.]" *Braunstein v. Comm'r,* 374 U.S. 65, 70, 83 S.Ct. 1663, 10 L.Ed.2d 757 (1963) ("If used in [its] ordinary meaning, ... the phrase 'attributable to' merely confines consideration to that gain *caused or generated by* the property in question." (emphasis added)). The court discerns no reason why this meaning is not applicable to this case. The court, therefore, must determine whether a carryover of net capital loss is "caused or generated by" a carryback of net capital loss to a prior tax year.

A "capital loss carryover" afforded by operation of 26 U.S.C. § 1212(a)(1)(B) necessarily is "caused or generated by" the year in which the "net capital loss" was incurred. Because a "net capital loss" may be carried over to any of the five successive years, even if the taxpayer is unable to carryback the "net capital loss" to a preceding year, the court cannot conclude that a "capital loss carryover" is "caused or generated by" the carryback of a net capital loss to a preceding tax year. The plain language of 26 U.S.C. § 6511(d)(2)(A) does not apply to WCI's carryover of 1994 unused net capital loss as it was not "caused or generated" by any alloca-

---

deficiency for such subsequent taxable year may be assessed.

26 U.S.C. §§ 6501(h), (j).

tion of net capital loss to offset capital gain in 1993, a prior carryback year.

WCI's carryover of the 1994 net capital loss to the 1995 tax year was caused by the 1994 net capital loss, not by the carryback of that net capital loss to the 1993 tax year. Therefore, the court has determined that the alleged 1995 overpayment at issue in this case is *not* "attributable to" the carryback of the 1994 net capital loss to 1993, because a capital loss carryover, pursuant to 26 U.S.C. § 1212(a)(1)(B), is the product of a net capital loss and not a carryback of that loss, pursuant to 26 U.S.C. § 1212(a)(1)(A). Accordingly, in this case, Plaintiffs' December 31, 1999 federal tax refund claim was untimely, because the claim does not qualify for the exception set forth in 26 U.S.C. § 6511(d)(2)(A) to the three year limitations period in 26 U.S.C. § 6511(a). Plaintiffs, therefore, have failed to satisfy the jurisdictional prerequisite of filing a timely refund claim. *See* 26 U.S.C. § 7422(a).

**2. No Expression Of Congressional Intent Implies That 26 U.S.C. § 6511(d)(2)(A) Is Ambiguous.**

The Government has advised the court that a July 2, 1945 House of Representatives Report concerning the Tax Adjustment Bill of 1945 confirms the "plain meaning" of 26 U.S.C. § 6511(d)(2)(A) and supports the Commission's decision, in this case, that Plaintiffs' refund claim does not satisfy the requirements of the special limitations period set forth in 26 U.S.C. § 6511(d)(2)(A). *See* Gov't Mot. at 14–18; *see also* H.R.Rep. No. 79–849 (1945), *reprinted in* 1945 C.B. 566, 585–86.[16]

Plaintiffs contend that "the legislative history . . . is entirely consistent with the application of the special statute of limitations . . . [set forth in 26 U.S.C. § ] 6511(d)(2)(A) to the refund sought in this case." *See* Pls. Resp. at 13–14; *see also id.* at 14–16 ("[T]here is nothing in the Committee Report . . . to suggest that Congress intended its solution of the generic problem described in [the Report] . . . to be limited to just the particular manifestation of that problem described later in [the Report]. The Committee's reference to the most obvious example of the problem . . . hardly supports a conclusion that it did not intend to enact a comprehensive solution to the general underlying problem. . . . The fact pattern presented by this case is a contemporary reflection of the same basic problem Congress described[.]'').

**16.** In relevant part, the House Report provides:

The 3–year period within which credits or refunds normally may be allowed or made frequently is insufficient in the case of an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back. This arises from the fact that the events which give rise to overpayments or to deficiencies attributable to carry-backs do not occur until after the close of the taxable year, and in some cases may not occur until a considerable number of years thereafter. The taxpayer, accordingly, does not have available, under present law, the necessary information upon which to make claims for credit or refund of overpayments resulting from carrybacks during part or all of the 3–year period within which such claim may be filed.

\* \* \*

*Example.* Corporation A, which keeps its books and files its tax returns on a calendar year basis, filed its income tax return from 1943 on March 15, 1944, and its return for 1945 on March 15, 1946. Corporation A's 1945 income tax return showed a net income of $10,000. On April 1, 1948, Corporation A, contending that it failed to deduct certain ordinary and necessary business expenses in computing its net income for 1945, filed a claim for credit or refund of its entire 1945 income tax; such claim was allowed on December 1, 1948. Upon taking such expenses into account, it further developed that Corporation A in fact sustained a net operating loss in 1945. *Such net operating loss, when carried back to 1943, produced an overpayment of Corporation A's income tax for 1943.* In the ordinary course of events, the time for filing a claim for credit or refund of an overpayment of Corporation A's income tax for 1943 expires on March 15, 1947. Corporation A, however, does not know that it has an overpayment of income tax for 1943 until some time in 1948. Inasmuch as Corporation A does not know until 1948 that it have overpaid its income tax for 1943 and inasmuch as the period for filing a claim for credit or refund of its income tax for 1943 expires on March 12, 1947, Corporation A under present law will not be able to receive credit or refund of its overpayment of income tax for 1943.

H.R.Rep. No. 79–849 (1945), *reprinted in* 1945 C.B. 566, 585–86 (underlining added). The Government explains that, in this example, "a capital loss carryover pursuant to 26 U.S.C. § 1212(a)(1)(B) is produced by a net capital loss and not a carryback of that loss pursuant to 26 U.S.C. § 1212(a)(1)(A)." Gov't Mot. at 16.

The Government argues that the court is required to reject Plaintiffs' interpretation, because 26 U.S.C. § 6511(d)(2)(A) may not be applied in a manner that "thwarts the intent of Congress or ... that will produce an absurd result." Gov't Supp. Br. at 5 (citing *Comm'r v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965)). Congress enacted this special statute of limitations to afford the taxpayer more time to file a refund claim for an overpayment that is attributable to a capital loss carryback—establishing the time to file a return for the net capital loss year, not the return for the carryback year. *See* Gov't Supp. Br. at 7.

At the Oral Argument and in supplemental briefing, the Government explained that if, as Plaintiffs maintain, the special limitations period applied to a claim for refund in a carryover year, the limitations period would run based on the year of the loss, not the carryover year. *See* TR 36–41; *see also* Gov't Supp. Br. at 3–4, 6–8; Gov't Second Supp. Br. at 3. Therefore, in carryover years, most taxpayers would face a shortened time to file a refund claim. *See* TR 36–41. To illustrate this point, the Government provided the following chart showing that, for the later carryover years, the three year period for filing of the return for the loss year would occur even before the carryover year began:

| Carryback Years | General Period Ends | Special Period Ends |
| --- | --- | --- |
| 1990 | 1994 | 1997 |
| 1991 | 1995 | 1997 |
| 1992 | 1996 | 1997 |
| 1993 (loss year) | 1997 | |

| Carryover Years | | |
| --- | --- | --- |
| 1994 | 1998 | 1997 |
| 1995 | 1999 | 1997 |
| 1996 | 2000 | 1997 |
| 1997 | 2001 | 1997 |
| 1998 | 2002 | 1997 |

Gov't Supp. Br. at 7–8. The Government explained that "[i]t is only in the odd circumstances of this case—involving the execution of an agreement to extend the period for assessment for the loss year—that [Plaintiffs] attempt[ ] to unsettle that which has been settled." *Id.* at 3.

Plaintiffs counter that the Government inappropriately assumed that the special limitations period is a substitute for the general period, irrespective of whether the general period expired. *See* Pls. Supp. Br. at 3. Moreover, Plaintiffs argue that the Government explicitly rejected this assumption in Revenue Ruling 65–281, 1965 WL 13058. *Id.* at 3–5 ("Revenue Ruling 65–281 clearly states that the period provided in [26 U.S.C.] § 6511(d)(2)(A) of the Code is not a substitute for the normal period in [26 U.S.C.] § 6511(a), but rather is only an extension of the normal period in those circumstances where the normal period has expired: 'The period provided in [26 U.S.C. § ] 6511(d)(2)(A) *of the Code was intended to constitute an additional period within which a claim for credit or refund of an overpayment of tax for the year to which the loss is carried might be made rather than a substitution for the periods provided in section 6511(a) of the Code.'* " (quoting Revenue Ruling 65–281, 1965–2 C.B. 444) (emphasis omitted)). Plaintiffs also assert that a 1996 Field Service Advice Memoranda and the current Internal Revenue Manual citing Revenue Ruling 65–281 also evidence the Government's rejection. *Id.* at 6 (citing Field Service Advice Memoranda, *available at* 1996 FSA LEXIS 475 (Mar. 7, 1996); INTERNAL REVENUE MANUAL, U.S. DEP'T OF THE TREASURY: INTERNAL REVENUE SERV., *available at* http://www.irs.gov, at 25.6.6.7.1(3) (last visited June 22, 2006)).

It has long been the rule in the United States Court of Appeals for the Federal Circuit that "[t]o overcome [a statute's] unambiguous language, [a litigant] must show a clearly expressed congressional intent contrary to the text of the statute." *Campion v. Merit Systems Prot. Bd.*, 326 F.3d 1210, 1214 (Fed.Cir.2003) (citing *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.")); *see also Orleans Intern., Inc. v. United States*, 334 F.3d 1375, 1380 (Fed.Cir. 2003) ("[R]esort[ing] to the legislative history

is unnecessary because the fee imposed here so clearly fits within the plain language of 28 U.S.C. § 1581(i)(2)[.])" (citing *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1152 (Fed.Cir.1999)).

Although the United States Court of Appeals for the Federal Circuit has not had an occasion to consider the construction and application of 26 U.S.C. § 6511(d)(2)(A), two other federal appellate courts have determined that this special exception was not ambiguous, because Congress wanted to correct the situation where "the existence of net operating losses might not become known until after the [26 U.S.C.] § 6511(a) period had expired[.]" *Longiotti v. United States*, 819 F.2d 65, 66 (4th Cir.1987) (citing *Mar Monte Corp. v. United States*, 503 F.2d 254, 256 (9th Cir.1974) ("Since the existence and extent of operating losses might not be known until the normal limitation period of section 6511(a) had expired, Congress enacted the special limitation period for net operating loss carrybacks in section 6511(d)(2)(A)[.]")); *see also* Gov't Mot. at 17–18.

The court concurs that no expression of congressional intent reveals any "clearly expressed congressional intent [that is] contrary to the text" of 26 U.S.C. § 6511(d)(2)(A). *Campion*, 326 F.3d at 1214 (citing *Garcia*, 469 U.S. at 75, 105 S.Ct. 479); *see also Zedner v. United States*, — U.S. —, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) (Scalia, J. concurring) ("[T]he use of legislative history is illegitimate and ill advised in the interpretation of any statute-and especially a statute that is clear on its face[.]"). The court, therefore, is satisfied that the plain language of 26 U.S.C. § 6511(d)(2)(A) prohibits application of the special limitations period. Moreover, the court has determined that, because the IRS's interpretive rulings, *e.g.*, a Revenue Ruling, a Field Service Advice Memoranda, and an Internal Revenue Manual, are not precedential, they may not be used to overturn the plain meaning of 26 U.S.C. § 6511(d)(2)(A). *See Comm'r v. Schleier*, 515 U.S. 323, 336 n. 8, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) ("Though this Revenue Ruling is not before us, we note that 'the [Internal Revenue] Service's inter-pretive rulings do not have the force and effect of regulations,' ... and they may not be used to overturn the plain language of a statute.") (citing *Davis v. United States*, 495 U.S. 472, 484, 110 S.Ct. 2014, 109 L.Ed.2d 457 (1990); *Bartels v. Birmingham*, 332 U.S. 126, 132, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947)).

### CONCLUSION

For the aforementioned reasons, the Government's August 5, 2005 Motion to Dismiss is granted. Accordingly, the Clerk of the United States Court of Federal Claims is directed to dismiss the April 7, 2005 Complaint and enter a Final Judgment in favor of the Government.

**IT IS SO ORDERED.**